**UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS**

No. 08-1131

GEORGE SINGLETON, APPELLANT,

v.

ERIC K. SHINSEKI,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued November 4, 2009                                        Decided March 25, 2010)

*Kenneth M. Carpenter* of Topeka, Kansas, was on the brief for the appellant.

*Shanti L. Hageman*, with whom *John H. Thompson*, Acting General Counsel; *R. Randall Campbell*, Assistant General Counsel; and *Brian B. Rippel*, Deputy Assistant General Counsel, all of Washington, D.C., were on the brief for the appellee.

Before GREENE, *Chief Judge*, and KASOLD and SCHOELEN, *Judges*.

KASOLD, *Judge*: U.S. Navy veteran George Singleton appeals through counsel a December 10, 2007, decision of the Board of Veterans' Appeals (Board) that assigned initial staged disability ratings for Mr. Singleton's service-connected post-traumatic stress disorder (PTSD) and schizophrenia from April 11, 1980, to August 6, 2001. For the reasons set forth below, the Board's decision will be affirmed.

## I. BACKGROUND

In the decision on appeal, the Board assigned the following staged disability ratings for Mr. Singleton's service-connected PTSD and schizophrenia: a 50% disability rating, effective from April 11, 1980, to December 9, 1980; a 100% disability rating, effective from December 10, 1980, to October 31,1991; a 70% disability rating, effective from November 1, 1991, to December 28, 2000;

and a 100% disability rating, effective from December 29, 2000.

On appeal, Mr. Singleton argues that the Board, in its assignment of staged disability ratings, improperly "reduced" to 70% disabling, the 100% disability rating assigned from December 10, 1980, to October 31, 1991. Specifically, Mr. Singleton argues that the Board erred by (1) failing to consider whether his 100% disability rating had been in effect for more than five years based on the dates assigned, and therefore, that he was entitled to the protections of 38 C.F.R. § 3.344; (2) failing to remand the issue of a "reduced" rating to the VA regional office (RO) to consider a possible rating reduction in the first instance; (3) finding that there was an evidentiary basis in the record to "reduce" his disability rating from 100% to 70% disabling; and (4) failing to consider whether the evidence supported a 100% disability rating from January 1995. The Secretary contends that until they have been in effect for the requisite period of time, staged disability ratings are not entitled to the protections of § 3.344, and that the Board's assignment of staged disability ratings was not clearly erroneous.

## II.  DISCUSSION
### A.  Protected Rating Under 38 C.F.R. § 3.344
#### *1. Parties' Arguments*

Mr. Singleton argues that (1) under subsection (a) of § 3.344, a stabilized disability rating may not be reduced without a recent, full, and complete medical examination indicating improvement, and (2) because he was retroactively assigned a 100% staged disability rating for a period greater than five years (from December 10, 1980, to October 31,1991), his disability rating was stabilized for the purposes of subsection (c), and therefore, could not be reduced without the Secretary first providing him a full and complete medical examination that supported such a reduction.

The Secretary argues that Mr. Singleton's underlying premise that § 3.344 applies to staged disability ratings is mistaken. Specifically, the Secretary contends that staged disability ratings, which are assigned as part of an initial or an increased disability evaluation, are intended to reflect the changes that occur in the veteran's disability picture during the pendency of the claim from the date of receipt of the claim for benefits or increased benefits, respectively, to the completion of adjudication, *Fenderson v. West*, 12 Vet.App. 119, 126 (1999); *see also Hart v. Mansfield*,

21 Vet.App. 505, 510 (2007) (holding staged disability ratings are applicable to increased-rating claims), and therefore, staged disability ratings are not contemplated by the procedural safeguards of § 3.344.

In support of his argument, the Secretary contends that the language and regulatory history of § 3.344, which predate *Fenderson* and the application of staged disability ratings, indicate that the procedural safeguards were forward-contemplating, and were intended to apply only to those disability ratings sought to be reduced in the future. Specifically, the Secretary notes that in April 1940, before § 3.344 was promulgated, VA administrative instructions provided that when determining whether to reduce a rating, rating agency officials must consider whether the evidence makes it "reasonably certain" that any material improvement in the disability *will last* as well as to be maintained under "the ordinary circumstances of life." Veterans Administration Service Letter, para. 1-4 (Apr. 19, 1940). The Secretary further maintains that VA Regulation (VAR) 1172(A), promulgated in December 1956, states that the protections afforded to disability ratings that had continued for five years or more "do not apply to disabilities which have not *become stabilized* and *are likely* to improve." VAR 1172(A) (Dec. 14, 1956) (emphasis added). Finally, regarding § 3.344, initially promulgated in February 1961, the Secretary points out that the regulation requires a determination by the rating agency as to whether the evidence makes it "reasonably certain that the improvement *will be maintained* under the ordinary conditions of life." 38 C.F.R. § 3.344(a) (emphasis added). Because, as the Secretary argues, staged disability ratings are assigned retroactively, the same medical and industrial evidence that the rating agency uses to assign staged ratings, also is used by the rating agency in its determination of whether any improvement in the disability actually was or was not maintained under the ordinary conditions of life, and whether a greater or lesser disability rating was warranted based on this evidence. Consequently, the Secretary asserts that the procedural safeguards of § 3.344, which halt reduction for a determination as to whether there has been material improvement, do not apply.

The Secretary also relies on the recent decision in *Reizenstein v. Shinseki*, 583 F.3d 1331 (Fed. Cir. 2009), which held that the procedural protections afforded by 38 C.F.R. § 3.343 against reductions of total disability ratings were not applicable to staged disability ratings because such protections were intended to apply prospectively, rather than retroactively, to those veterans who had

become dependent upon the benefits deriving from a total disability rating. Otherwise stated, veterans assigned a total disability rating during the staged disability rating process – who upon completion of the staged disability rating process receive a lump sum payment – have not become dependent on the total disability rating for any period of time, and, therefore, are not eligible for the protections afforded by § 3.343. *Reizenstein*, 583 F.3d at 1337. Mr. Singleton, in response, points out that *Reizenstein* does not concern the regulation at issue here, and he attempts to distinguish § 3.343 from § 3.344. He observes that § 3.344 applies where a veteran's condition has stabilized for a period of five years or more, whereas § 3.343 does not include a temporal requirement.

*2. Analysis*

In *Cathedral Candle Co. v. U.S. Int'l Trade Comm'n*, the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) described the substantial level of deference generally afforded to an agency's interpretation of its own regulation, noting that interpretation to be "'of controlling weight unless it is plainly erroneous or inconsistent with the regulation.'" 400 F.3d 1352, 1364 (Fed. Cir. 2005) (quoting *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414 (1945)). Such generous deference is due even when the agency's interpretation is presented in a brief during the litigation stage, as long as there is "'no reason to suspect that the interpretation does not reflect the agency's fair and considered judgment on the matter in question.'" *Id.* (quoting *Auer v. Robbins*, 519 U.S. 452, 461-62 (1997)). In *Reizenstein*, the Federal Circuit applied this standard in granting deference to the Secretary's regulatory interpretation that § 3.343 did not apply to staged disability ratings. *Reizenstein*, 583 F.3d at 1335-36.

The Secretary asserts that § 3.344 similarly is not applicable in the staged disability rating context, and the Court finds no "reason to suspect that the interpretation does not reflect the agency's fair and considered judgment on the matter in question." *Cathedral Candle Co.*, 400 F.3d at 1364. As such, the Secretary's failure to clearly articulate his interpretation of § 3.344 prior to the litigation stage does not mean that the Court will not grant deference to the interpretation of the regulation that he now advances. The Secretary's interpretation of § 3.344 is not "plainly erroneous or inconsistent with the regulation." *Id.* Nothing in the plain text of the regulation requires its application in the staged disability rating context. Moreover, the Secretary has asserted that the purpose behind § 3.344 is to protect a veteran, reliant on his disability compensation, from an arbitrary reduction of

his disability rating. Where benefits are reduced retrospectively in the staged disability ratings context, there is no danger that a veteran will be deprived of income that he or she is accustomed to using to meet day-to-day expenses. The Secretary's interpretation of § 3.344, i.e., that it only applies to prospective rating reductions, is consistent with this purpose.

On this note, Mr. Singleton advances no compelling argument that §§ 3.343(a) and 3.344(a) are so dissimilar that the Court should ignore the Federal Circuit's treatment of § 3.343 in *Reizenstein*. As mentioned above, in *Reizenstein*, the Federal Circuit accepted the Secretary's argument that the purpose of § 3.343 was "to protect veterans who are dependent on the monthly compensation that accompanies their total disability rating from a sudden and arbitrary reduction in their benefits that could jeopardize their ability to pay for day-to-day necessities." 583 F.3d at 1337. The temporal requirement in § 3.344 renders the Secretary's argument that the two regulations are both to be applied prospectively even more compelling. Specifically, a veteran who has been in receipt of disability compensation for an extended period of time almost certainly has adjusted to having that income for ongoing expenses, but such reliance is not present when benefits are granted retroactively by a lump sum, as is the case in the context of staged disability ratings.

It is further noted that the very nature of staged disability ratings requires rating officials to consider the full extent of the veteran's disability as established by the totality of the evidence existing in the record – including the veteran's medical condition and ability to work – and to determine whether, from one separate and distinct period of time to another, any worsening of the condition or improvement is reflected in the record that would necessitate a greater or lesser award of disability compensation. *See Hart*, 21 Vet.App. at 509 ("In cases where staged ratings are appropriate, the Secretary must consider all of 'the evidence of record from the time of the veteran's application.'" (quoting *Fenderson*, 12 Vet.App. at 127)); *O'Connell v. Nicholson*, 21 Vet.App. 89, 93 (2007) ("Because the claims process before the agency can be lengthy, and because the level of a veteran's disability may fluctuate over time, staged ratings are a sensible mechanism for allowing the assignment of the most precise disability rating – one that accounts for the possible dynamic nature of a disability while the claim works its way through the adjudication process.").

Accordingly, we hold that the Secretary's interpretation of § 3.344 is not "plainly erroneous or inconsistent with the regulation," and that therefore the procedural protections of the regulation

5

are inapplicable to retroactively assigned staged disability ratings. Given this holding, we need not decide the broader question of whether a stabilized disability rating protected under § 3.344 may ever be reduced without a recent, full, and complete medical examination.[1]

## B.  Other Error

Mr. Singleton's alternative argument that the Board erred by not remanding the issue of a "reduced" disability rating to the RO to consider a possible reduction in the first instance is not supported by the record or the law. Moreover, the record does not support Mr. Singleton's additional alternative arguments that the Board clearly erred by not maintaining his 100% disability rating from November 1, 1991, to December 28, 2000, or, at a minimum, by not considering entitlement to a 100% disability rating from January 6, 1995, forward.

### *1. Remand to Regional Office*

Contrary to Mr. Singleton's assertion that the Board was required to remand the assignment of his staged disability ratings prior to "reducing" his evaluation from 100% to 70% disabling, no such action is required by law or supported by the record. Specifically, Mr. Singleton placed his claim on administrative appeal to the Board, and the Board had jurisdiction to decide the appropriate rating. *See Percy v. Shinseki*, 23 Vet.App. 37, 41 (2009) ("Board has jurisdiction over '[a]ll questions in a matter which under section 511(a) of [title 38, U.S. Code,] is subject to a decision by the Secretary.'" (quoting 38 U.S.C. § 7104(a))); *see also Johnston v. Brown*, 10 Vet.App. 80, 84 (1997) (assignment of a disability rating is a question of fact).

Moreover, not only did the Board grant Mr. Singleton staged disability ratings more favorable than the RO awarded below, but here on appeal Mr. Singleton does not assert that new evidence was submitted after he appealed to the Board or that any such evidence otherwise was considered in the first instance by the Board. *See O'Connell*, 21 Vet.App. at 95 (Board's assignment of staged disability ratings on same evidence before the RO renders inapplicable *Disabled Am. Veterans v. Sec'y of Veterans Affairs*, 327 F.3d 1339, 1347 (Fed. Cir. 2003) (claimants are entitled to two administrative reviews)). Indeed, in his appeal to the Board, Mr. Singleton specifically asserted that

_____

[1] For the record, the Secretary argues that a recent, full, and complete medical examination is not always required before a stabilized disability rating may be reduced. Moreover, the Board found that even if § 3.344 applied, the totality of the evidence, including a 1992 private medical opinion, was "at least as detailed as [that] upon which the Board has awarded the initial 100[%] rating for the earlier period." Record (R). at 1237.

6

the record was fully developed and explicitly requested the Board to assign the appropriate staged disability ratings. And Mr. Singleton fails, for obvious reasons, to even assert, let alone demonstrate, any prejudice resulting from the Board's assignment of ratings as he requested. *See Shinseki v. Sanders*, 129 S. Ct. 1696, 1706 (2009) (appellant bears burden of demonstrating prejudice on appeal).

### 2. Clear Error in Rating Assignment

When assigning the 70% disability rating, the Board found, inter alia, that Mr. Singleton began working in a significant capacity in November 1991. R. at 1234. The Board also noted that (1) in 1992, Mr. Singleton worked part-time as a telemarketer; (2) from 1994 to 2000, he worked for a security company for two years, an athletic club for two years, and a department store for another two years; (3) a February 1996 Social Security Administration (SSA) decision affirmed a November 1991 decision to cease Mr. Singleton's SSA benefits because he continued to be engaged in substantially gainful activity; (4) SSA records further indicated that he did not cease working until December 29, 2000; and (5) Mr. Singleton was able to maintain a relationship with his spouse. R. at 1235-36. Further, although the Board considered a March 1995 private psychiatrist's assessment that Mr. Singleton could not function independently outside the area of his home, the Board discounted that opinion because Mr. Singleton's employment at a security company, athletic club, and department store during this same period of time suggested a higher level of functioning than that reported by Mr. Singleton's private physician. R. at 1236.

In sum, the Board found that Mr. Singleton's psychological symptoms severely affected his social and industrial adaptability from November 1, 1991, to December 28, 2000. The Board also found, however, that during this time Mr. Singleton was employed, married, and that his psychological symptoms did not result in "virtual isolation in the community, a profound retreat from reality, or cause a demonstrable inability to obtain or retain employment; or total occupational and social inadaptability." R. at 1224. On that basis, the Board ultimately found that Mr. Singleton did not meet the requirements for an assignment of a 100% disability rating from November 1, 1991, to December 28, 2000. R. at 1224; *see* 38 C.F.R. § 4.132, Diagnostic Codes (DCs) 9402, 9411 (1996 and 2007).

7

The Board has the duty to weigh the evidence. *See McClain v. Nicholson*, 21 Vet.App. 319, 325 (2007). In doing so, the Board must assess the credibility and probative weight of the evidence. *Washington v. Nicholson*, 19 Vet.App. 362, 367-68 (2005) (it is Board's responsibility to "assess the credibility of and weight to be given to" the evidence of record); *Owens v. Brown*, 7 Vet.App. 429, 433 (1995) (same); *see also Elkins v. Gober*, 229 F.3d 1369, 1377 (Fed. Cir. 2000) ("Fact-finding in veterans cases is to be done by the [Board], not by the Veterans Court."); *Johnston*, 10 Vet.App. at 84 (disability rating is a question of fact). Mr. Singleton fails to demonstrate that the Board's statement is inadequate, *see Allday v. Brown*, 7 Vet.App. 517, 527 (1995) (Board's statement "must be adequate to enable a claimant to understand the precise basis for the Board's decision, as well as to facilitate review in this Court"), or that the Board's assignment of a 70% disability rating is clearly erroneous, *see Hilkert v. West*, 12 Vet.App. 145, 151 (1999) (appellant has the burden of demonstrating error in the Board's decision); *see also Johnston*, *supra*; *Gilbert v. Derwinski*, 1 Vet.App. 49, 52 (1990) ("'A finding is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948))).

## III. CONCLUSION

Upon consideration of the foregoing, the Board's December 10, 2007, decision is AFFIRMED.