# United States Court of Appeals
# for the Federal Circuit

---

**GEORGE SINGLETON,**
*Claimant-Appellant,*

v.

**ERIC K. SHINSEKI, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee.*

---

2010-7106

---

Appeal from the United States Court of Appeals for Veterans Claims in case no. 08-1131, Judge Bruce E. Kasold.

---

Decided: August 8, 2011

---

KENNETH M. CARPENTER, Carpenter, Chartered, of Topeka, Kansas, argued for claimant-appellant.

MARTIN F. HOCKEY, JR., Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent-appellee. With him on the brief were TONY WEST, Assistant Attorney General, JEANNE E. DAVIDSON, Director, and TODD M. HUGHES, Deputy Director. Of

counsel on the brief were MICHAEL J. TIMINSKI, Deputy Assistant General Counsel and DANA RAFFAELLI, Attorney, United States Department of Veterans Affairs, of Washington, DC.

———————————————

Before BRYSON, PLAGER, and PROST, *Circuit Judges*.

PROST, *Circuit Judge*.

George Singleton is a Navy veteran who served during the Vietnam War and who now suffers from post-traumatic stress disorder ("PTSD") and schizophrenia. He applied for disability benefits in February 1981 but his claim was rejected. Much later, the United States Court of Appeals for Veterans Claims ("Veterans Court") and the Board of Veterans' Appeals ("Board") concluded that Mr. Singleton was in fact entitled to benefits stemming from that initial claim. This case concerns the procedures the Board applied to retrospectively assess the extent of Mr. Singleton's disability (and so compute the value of his claim) during the twenty-seven years from 1980 to 2007. Mr. Singleton contends that the Board's procedures denied him due process. For the reasons set forth below, we disagree.

## I. BACKGROUND

For our purposes, the story of this case began April 11, 1980, when the Department of Veterans Affairs ("VA") added diagnosis of PTSD to the disabilities rating schedule. *See generally* Schedule for Rating Disabilities; New Diagnostic Code, 45 Fed. Reg. 26,326 (Apr. 18, 1980) (later codified at 38 C.F.R. pt. 4). About ten months after PTSD was added to the schedule, Mr. Singleton filed a claim for disability benefits in connection with an acquired psychiatric disorder, namely schizophrenia and

PTSD. Mr. Singleton contended that his condition was traceable to his Navy service in the 1970s, but his claim was denied for lack of service connection after the VA was unable to verify some of his allegations. For various reasons, this denial never became final and Mr. Singleton's case remained open but dormant. *See Singleton v. Nicholson*, No. 04-2396, 2006 WL 4111519, at *1 (Vet. App. Dec. 22, 2006) ("*2006 Ct. Op.*") (analyzing the status of Mr. Singleton's claim between 1981 and 2001).

Time passed. On August 7, 2001, Mr. Singleton asked that his claim be reopened and submitted new evidence of service connection. This time, the VA granted service connection and assigned a 100% disability rating effective the date of the 2001 filing. On appeal to the Board, Mr. Singleton argued that his benefits should be back-dated further in accordance with his 1981 claim. The Board held a hearing in April 2004 concerning this argument, which it subsequently rejected. Bd. Vet. App. 0429095 (Oct. 22, 2004), *rev'd, 2006 Ct. Op.*

The Veterans Court, however, agreed with Mr. Singleton that benefits should have been awarded in the period before the 2001 filing reopened the case. *2006 Ct. Op.* at *2. It ordered the Board to determine an earlier effective date for Mr. Singleton's benefits and to compute his back benefits accordingly. The Veterans Court specifically instructed the Board to determine the level of Mr. Singleton's disability "for the various periods of time during the pendency of the claim, a practice known as 'staged' ratings." *Id.*

On remand the Board determined that Mr. Singleton was entitled to benefits dating back to the addition of PTSD to the rating schedule, April 11, 1980. Bd. Vet. App. 0723470 (July 30, 2007) ("*July 2007 Bd. Op.*"), *aff'd*

*sub nom. Singleton v. Shinseki*, 23 Vet. App. 376 (2010). Five months later, the Board established the following staged ratings for Mr. Singleton's disability:[1]

> Period I (April 11, 1980–December 9, 1980): 50%
>
> Period II (December 10, 1980–October 31, 1991): 100%
>
> Period III (November 1, 1991–December 28, 2000): 70%
>
> Period IV (December 29, 2000 onward):    100%

*Dec. 2007 Bd. Op.* Notably, the Board held that the 70% rating for Period III was justified because Mr. Singleton was able to maintain jobs during that period and was married. *Id.*

Mr. Singleton appealed to the Veterans Court. He argued that the transition from a 100% rating in Period II to 70% in Period III was a "reduction" in his benefits and that, under the applicable regulations, he was entitled to an opportunity to submit new evidence and argument and, potentially, to undergo a medical exam before such a reduction could be made. The Veterans Court disagreed and affirmed the Board. *Singleton v. Shinseki*, 23 Vet. App. 376 (2010) ("*2010 Ct. Op.*"). Mr. Singleton timely

---

[1]    Having set April 11, 1980 as the effective date for Mr. Singleton's disability, the Board initially remanded to the Regional Office for determination of rating. *July 2007 Bd. Op.* Following a motion for reconsideration by Mr. Singleton, however, the Board withdrew the remand and took it upon itself to determine ratings. Bd. Vet. App. 0738783 (Dec. 10, 2007) ("*Dec. 2007 Bd. Op.*"), *aff'd sub nom. Singleton v. Shinseki*, 23 Vet. App. 376 (2010).

appealed. This court has jurisdiction to review the legal determinations of the Veterans Court. 38 U.S.C. § 7292. Our review of those legal determinations is de novo. This court may not review the Veterans Court's factual findings or its application of law to facts absent a constitutional issue. *Id.*; *see also Reizenstein v. Shinseki*, 583 F.3d 1331, 1334 (Fed. Cir. 2009).

## II. ANALYSIS

Mr. Singleton's argument in this appeal is a variation of the case he presented to the Veterans Court. There, Mr. Singleton contended that because the Board's staged rating assessment included a total disability period exceeding five years (i.e., Period II, from 1980 to 1991), Mr. Singleton's disability during that period became "stabilized." *See* 38 C.F.R. § 3.344. He urged that when his rating became stabilized, the VA was precluded from reducing it from the stabilized level without following the procedural provisions of § 3.344, which included "a recent, full, and complete medical examination indicating improvement[.]" *See 2010 Ct. Op.* at 378. As already noted, the Veterans Court rejected this line of reasoning. Applying the logic of this court's decision in *Reizenstein*, the Veterans Court held that the protections of § 3.344 were not to be applied in cases of retrospective staged ratings.

Rather than simply present this court with the same argument the Veterans Court already rejected, Mr. Singleton applied a fresh coat of paint in the hope of attracting more favorable judicial treatment. Mr. Singleton no longer seeks a holding that § 3.344 applies to retrospective staged ratings. Instead, he argues that the VA's failure to require application of the procedures of § 3.344 (or some other hypothetical procedures closely resembling them) when retrospectively assessing Mr. Singleton's

disability effectively denied Mr. Singleton of property without due process and so fails constitutional muster.[2]

The subject "property," according to Mr. Singleton, was the total disability rating that would begin December 10, 1980. The "denial" of that property, again according to Mr. Singleton, occurred when the Board held that "Period II" of Mr. Singleton's total disability ended on October 30, 1991, and "Period III" began, with Mr. Singleton only 70% disabled from November 1, 1991 to December 28, 2000. Mr. Singleton argues that the due process clause required a separate evidentiary proceeding before the Board could conclude that a period of 70% disability should follow one of total disability.

We disagree. To begin with, we note that, assuming the staged ratings assigned by the Board ultimately

---

[2] The government urges that this constitutional argument was not made to the Veterans Court or the Board and so should be held waived. There is precedent for this court declining to hear arguments, even constitutional arguments, not raised to previous tribunals. *See Solorio v. United States*, 483 U.S. 435, 451 n.18 (1987); *Smith v. West*, 214 F.3d 1331, 1334 (Fed. Cir. 2000). We agree with the government that it is incumbent upon appellants to timely raise all arguments in support of their cases before trial and intermediate tribunals, and failure to do so can lead to waiver before this court. Nevertheless, we decline the government's invitation to affirm the Veterans Court on waiver grounds alone. Though the new constitutional gloss Mr. Singleton has applied to his case before this court was not present below, his argument is essentially consistent with his previous positions and in this unique circumstance we will hear it. We reject, however, Mr. Singleton's suggestion that his failure to present his constitutional claims earlier is excusable because he did not know that the Veterans Court would reject his arguments under § 3.344. Litigants are charged with presenting all of their arguments in a timely fashion.

become final, they will have been the subject of (1) an evidentiary hearing held by the Board in 2004, (2) an appeal to the Veterans Court, and (3) an appeal to this court.

As the government noted in its briefing, "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (internal quotation marks omitted). In that case the Supreme Court set forth guidance for determining the constitutional sufficiency of a process that results in a deprivation of property:

> [O]ur prior decisions indicate that identification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and, finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 334–35. Applying this guidance to Mr. Singleton's case leads us to conclude that the process applied by the Board and the Veterans Court was sufficient to meet constitutional requirements.

As to the first factor, this court has previously recognized a constitutionally-protected property interest in a veteran's entitlement to disability benefits. *Cushman v. Shinseki*, 576 F.3d 1290, 1298 (Fed. Cir. 2009). This

recognition was based on our reasoning that "[v]eteran's disability benefits are nondiscretionary, *statutorily mandated* benefits. A veteran is entitled to disability benefits upon a showing that he meets the eligibility requirements set forth in the governing statutes and regulations." *Id.* (emphasis added). To the extent that Mr. Singleton has a protectable property interest here to disability benefits, that interest extends only so far as the law creates it. And while Mr. Singleton is correct that § 3.344 confers a measure of additional security to veterans whose disability rating has "stabilized" (i.e., has remained at the same level for over five years), we see nothing in the regulation or the caselaw suggesting that this extra security is available when establishing staged ratings retrospectively. This court has previously expressed skepticism that retrospective assessment of changes in a veteran's disability rating could work a "reduction" in the veteran's compensation. *See Stelzel v. Mansfield*, 508 F.3d 1345, 1347–49 (Fed. Cir. 2007). We therefore disagree with Mr. Singleton that any constitutionally-protected interest he has extends so far as to provide him security against a staged rating computation in which a period of total disability is followed by one of a lower rating.

This conclusion is consistent with our opinion in *Reizenstein*. 583 F.3d 1331. There, the veteran claimant argued that the Board, operating in the retrospective staged rating context, could not "reduce" his disability rating from one period to the next without providing a medical examination as per 38 C.F.R. § 3.343. We disagreed, deferring to the VA's position that such procedures were inapplicable to staged ratings. *Id.* at 1336–37. A similar logic applies here. In the circumstance presented in this case, we see no constitutional deprivation in the VA adopting for staged ratings a set of procedures tailored to that context.

Turning to the second factor, we deem that the process applied to Mr. Singleton's case was more than sufficient to minimize the risk of Mr. Singleton being erroneously deprived of his benefits. Mr. Singleton had a 2004 hearing before the Board. In 2007 he specifically requested staged rating of the Board and had the opportunity to argue for whatever ratings he thought best applied. Unsatisfied with the Board's staged rating decision, he appealed to the Veterans Court and, unsatisfied with that decision, he appealed to this court. He has shown no reason why this was not sufficient process to expose any error in the Board's decision, nor any justification to expect that yet another round before the Board would make the process substantially more fair. We therefore conclude that the process here was sufficient to protect Mr. Singleton's interests.

Finally, the government has a straightforward interest in the speedy resolution of Mr. Singleton's claim. Adding further rounds of review (and, potentially, further rounds of appeal) would require yet more hours of labor and additional adjudication costs for the government.

In sum, Mr. Singleton has had his day in court concerning the staged ratings and legal process sufficient to satisfy his Fifth Amendment rights. We see no constitutional deprivation in the conduct of his case, and we therefore affirm.

**AFFIRMED**