Citation Nr: 1725252 
Decision Date: 06/16/17 Archive Date: 07/17/17

DOCKET NO. 11-01 540 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Nashville, Tennessee


THE ISSUES

1. Entitlement to an initial compensable rating prior to October 19, 2010, a rating in excess of 20 percent from October 19, 2010 to November 30, 2016, and a compensable rating from December 1, 2016, for bilateral hearing loss.

2. Entitlement to service connection for an upper back disability. 


REPRESENTATION

Veteran represented by: Tennessee Department of Veterans Affairs


WITNESSES AT HEARING ON APPEAL

The Veteran and his son



ATTORNEY FOR THE BOARD

Polly Johnson, Associate Counsel


INTRODUCTION

The Veteran served on active duty from February 1971 to February 1975.

This matter is before the Board of Veterans' Appeals (Board) on appeal from December 2009, February 2012, and December 2016 rating decisions issued by the Department of Veterans Affairs (VA) Regional Office (RO) in Nashville, Tennessee. 

In the December 2009 rating decision, the RO granted entitlement to service connection for bilateral hearing loss and assigned a noncompensable rating, effective July 22, 2009. The RO also denied service connection for an upper back disability and denied the Veteran's application to reopen a previously denied claim of entitlement to service connection for a low back disability. 

A February 2012 rating decision increased the rating for bilateral hearing loss to 20 percent, effective October 19, 2010.

In October 2012, the Veteran and his son testified at a videoconference hearing before the undersigned. A transcript of the hearing has been associated with the claims file.

In April 2013, the Board reopened the claim for a low back disability and remanded the Veteran's claims for an increased rating for hearing loss and service connection for a psychiatric disorder, tinnitus, and upper and lower back disabilities for additional development.

In October 2013, the RO granted service connection for thoracolumbar strain with degenerative joint disease of the lumbar spine and tinnitus. In November 2013, the RO granted service connection for anxiety disorder, NOS, claimed as PTSD.
 
The Board's March 2016 remand referred the issue of entitlement to service connection for a lung condition to the agency of original jurisdiction (AOJ). An April 2016 rating decision denied service connection for that condition. 

A December 2016 rating decision reduced the rating for bilateral hearing loss to 0 percent, effective December 1, 2016.


FINDINGS OF FACT

1. For the period up to October 19, 2010, the Veteran had no worse than Level II hearing in either ear; from October 19, 2010, the Veteran had no worse than Level V hearing in each ear.

2. The December 2016 reduction in the rating for hearing loss disability was done on the basis of a single examination without consideration of whether any material improvement was reasonably certain to be maintained under the ordinary conditions of life.

3, The Veteran's current upper back disability did not begin during or within one year of service; and is not otherwise caused or aggravated by a disease or injury in active service.


CONCLUSIONS OF LAW

1. The criteria for a compensable rating for bilateral hearing loss for the period prior to October 19, 2010, or a rating in excess of 20 percent from October 19, 2010 have not been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 3.321, 4.1, 4.3, 4.7, 4.85-4.86, Diagnostic Code 6100 (2016).

2. The December 2016 rating reduction for hearing loss disability was void ab initio.

3. The criteria for service connection for an upper back disability have not been met. 38 U.S.C.A. §§ 1110, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.303 (2016).



REASONS AND BASES FOR FINDINGS AND CONCLUSION

I. Procedural Duties

VA has a duty to provide notice of the information and evidence necessary to substantiate a claim. 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b). An August 2009 letter provided this notice and there is no allegation that it was inadequate.

VA also has a duty to provide assistance to substantiate a claim. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159(c).

The Veteran's service treatment records and military personnel records have been obtained. Post-service VA and private treatment records have also been obtained. Pursuant to the Board's March 2016 remand, the AOJ scheduled the Veteran for VA examinations for his hearing loss and upper back disabilities. There has been no allegation of any deficiency in this regard. See Stegall v. West, 11 Vet. App. 268 (1998).

As there is no indication that any additional notice or assistance could aid in substantiating these claims, the Board finds that VA has satisfied its duties under the VCAA and proceeds with consideration of the appeal. See Newhouse v. Nicholson, 497 F.3d 1298 (Fed. Cir. 2007).



II. Hearing Loss

Disability ratings are determined by applying the criteria set forth in VA's Schedule for Rating Disabilities, found in 38 C.F.R., Part 4. The Rating Schedule is primarily a guide in the evaluation of disability resulting from all types of diseases and injuries encountered as a result of or incident to military service. The ratings are intended to compensate, as far as can practicably be determined, the average impairment of earning capacity resulting from such diseases and injuries and their residual conditions in civilian occupations. 38 U.S.C.A. § 1155; 38 C.F.R. § 4.1. 

Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria for that rating. Otherwise the lower rating will be assigned. 38 C.F.R. § 4.7. All benefit of the doubt will be resolved in the Veteran's favor. 38 C.F.R. § 4.3.

In the case of an initial rating, VA is required to consider whether staged ratings are warranted during any period since the effective date of service connection, in order to account for changes in the disability during the appeal period. Fenderson v. West, 12 Vet. App. 119 (1999).

Ratings of hearing loss range from noncompensable to 100 percent based on organic impairment of hearing acuity as measured by the results of speech discrimination tests combined with the average hearing threshold levels as measured by pure tone audiometry tests in the frequencies 1000, 2000, 3000, and 4000 cycles per second. To rate the degree of disability for service-connected hearing loss, the Rating Schedule has established eleven auditory acuity levels, designated from level I, for essentially normal acuity, through level XI, for profound deafness. 38 C.F.R. § 4.85(h), Table VI. 

In order to establish entitlement to a compensable rating for hearing loss, it must be shown that certain minimum levels of the combination of the percentage of speech discrimination loss and average pure tone decibel loss are met. The assignment of disability ratings for hearing impairment is derived by a mechanical application of the Rating Schedule to the numeric designations assigned after audiometric evaluations are rendered. Lendenmann v. Principi, 3 Vet. App. 345, 349 (1992). 

The criteria for rating hearing impairment use controlled speech discrimination tests (Maryland CNC) together with the results of pure tone audiometry tests. These results are then charted on Table VI, Table VIA, in exceptional cases as described in 38 C.F.R. § 4.86, and Table VII, as set out in the Rating Schedule. 38 C.F.R. § 4.85. An exceptional pattern of hearing loss occurs when the pure tone threshold at 1000, 2000, 3000, and 4000 Hertz is 55 decibels or more, or when the pure tone threshold is 30 decibels or less at 1000 Hertz and 70 decibels or more at 2000 Hertz. 38 C.F.R. § 4.86.

The Veteran's bilateral hearing loss is currently rated as noncompensable from July 22, 2009 to October 19, 2010, at 20 percent after October 19, 2010, and as noncompensable from December 1, 2016.

The RO conceded that the Veteran suffered from acoustic trauma in service coincident with his duty on aboard an aircraft carrier and granted service connection for bilateral hearing loss in the aforementioned December 2009 rating decision. A noncompensable rating was assigned effective from July 22, 2009. This decision followed a November 2009 VA audiometric examination in which pure tone thresholds, in decibels, were as follows:

Puretone Threshold

500 Hz
1000 Hz
2000 Hz
3000 Hz
4000 Hz
Right Ear
20
25
40
70
70
Left Ear
20
20
25
65
65

Puretone Threshold Average, 1000 Hz - 4000 Hz
Right Ear
51.25
Left Ear
43.75

Speech audiometry revealed speech recognition ability of 90 percent in both ears. These readings on Table VI of 38 C.F.R. § 4.85 result in Level II hearing in both ears, warranting a noncompensable rating with application of Table VII.

In April 2010, the Veteran submitted a statement indicating that he was issued hearing aids in September 1995 and that he was told by medical professionals that his hearing would only get worse over time. An April 2010 VA audiology treatment note documents the Veteran's hearing aid evaluation.

On VA audiometric examination in October 2010, pure tone thresholds, in decibels, were as follows:

Puretone Threshold

500 Hz
1000 Hz
2000 Hz
3000 Hz
4000 Hz
Right Ear
35
30
55
75
75
Left Ear
40
45
60
75
80

Puretone Threshold Average, 1000 Hz - 4000 Hz
Right Ear
58.75
Left Ear
65

Speech audiometry revealed speech recognition ability of 70 percent in both ears. These readings on Table VI of 38 C.F.R. § 4.85 result in Level V hearing in both ears, warranting a 20 percent rating in both ears with application of Table VII. 

In March 2011, the Veteran sought a hearing evaluation at VA. An otoscopy was administered, which revealed clear ear canals. Audiometric testing demonstrated mild sloping to moderately severe sensorineural hearing loss bilaterally with fair word recognition bilaterally. He noted displeasure with his hearing aids.

The Veteran submitted a statement in April 2011 advising that his hearing had become worse, and that he was getting new hearing aids.

A VA treatment note from April 2011 reflected a visit in which the Veteran was instructed on usage and insertion techniques for his hearing aids. 

The Veteran underwent a VA audiological evaluation in July 2012. Puretone thresholds were as follows:

Puretone Threshold

500 Hz
1000 Hz
2000 Hz
3000 Hz
4000 Hz
Right Ear
35
35
55
70
65
Left Ear
35
40
60
70
65


Puretone Threshold Average, 1000 Hz - 4000 Hz
Right Ear
56
Left Ear
59

Speech audiometry revealed speech recognition ability of 84 percent in the right ear and 76 percent in the left ear. These readings on Table VI of 38 C.F.R. § 4.85 result in Level II hearing in the right ear and Level IV hearing in the left ear, warranting a noncompensable rating in both ears with application of Table VII.

The Veteran provided testimony at his Board hearing that his hearing was getting worse and he had need hearing aids since 1995.

In its April 2013 remand, the Board noted that the Veteran complained that his hearing loss had worsened in severity, and directed that he be afforded another VA audiometric examination. A new examination was completed in September 2013, revealed pure tone thresholds, in decibels, as follows:

Puretone Threshold
 
500 Hz
1000 Hz
2000 Hz
3000 Hz
4000 Hz
Right Ear
45
40
75
80
85
Left Ear
45
50
65
80
85

Puretone Threshold Average, 1000 Hz - 4000 Hz
Right Ear
70
Left Ear
70

Speech audiometry revealed speech recognition ability of 84 percent in the right ear and 88 percent in the left ear. These readings on Table VI of 38 C.F.R. § 4.85 result in Level III hearing in both ears, warranting a noncompensable rating in both ears with application of Table VII.

Upon VA audiological examination in June 2014, pure tone thresholds, in decibels, were as follows:

Puretone Threshold
 
500 Hz
1000 Hz
2000 Hz
3000 Hz
4000 Hz
Right Ear
35
40
75
75
70
Left Ear
30
30
65
75
75

Puretone Threshold Average, 1000 Hz - 4000 Hz
Right Ear
65
Left Ear
61

Speech audiometry revealed speech recognition ability of 86 percent in both ears. These readings on Table VI of 38 C.F.R. § 4.85 result in Level III hearing in both ears, warranting a noncompensable rating with application of Table VII.

A July 2014 rating decision did not change the Veteran's assigned rating, noting that though some improvement had been shown, sustained improvement had not been definitively established. 38 C.F.R § 3.344.

In its March 2016 remand, the Board directed that the Veteran be afforded an additional VA audiometric examination to assess the current severity of his hearing loss disability, and requested that results of a July 2012 audiogram be associated with the claims file (the results of that audiogram were associated with the file and are noted above). The Veteran underwent VA audio examination in May 2016, and the results were as follows:

Puretone Threshold

500 Hz
1000 Hz
2000 Hz
3000 Hz
4000 Hz
Right Ear
30
35
70
75
70
Left Ear
35
35
65
85
80

Puretone Threshold Average, 1000 Hz - 4000 Hz
Right Ear
63
Left Ear
66

Speech audiometry revealed speech recognition ability of 86 percent in both ears. These readings on Table VI of 38 C.F.R. § 4.85 result in Level III hearing in both ears, warranting a noncompensable rating in both ears with application of Table VII.

Taking the results of each audiogram discussed above, in addition to the Veteran's statements regarding his hearing loss, the Board finds the preponderance of the evidence is against the assignment of a compensable initial rating for bilateral hearing loss prior to October 19, 2010, or in excess of 20 percent from October 19, 2010. As discussed below, the December 2016 reduction in the rating to 20 percent was void ab initio, and the 20 percent rating is restored.

The Board acknowledges the Veteran's reports regarding the severity of his bilateral hearing loss, to include the functional effects of this disability on his daily life, but the schedular criteria for rating hearing loss contemplate these functional effects. Doucette v. Shulkin, No. 15-2818; 2017 U.S. App. Vet. Claims Lexis 319 (March 6, 2017).

VA has regulations which must be considered in the case of rating reductions. See 38 C.F.R. §§ 3.105(e), 3.344. It is well established in the Court's case law that VA cannot reduce a veteran's disability evaluation without first finding, inter alia, that the service-connected disability has improved to the point that the Veteran is now better able to function under the ordinary conditions of life and work. See Murphy v. Shinseki, 26 Vet. App. 510, 517 (2014). A Veteran who has been awarded an increased rating and begun to receive payments has a reliance interest in that compensation that cannot be reduced without due process of law. Murphy v. Shinseki, 26 Vet. App. at 515.

The regulations pertaining to reductions apply to prospective payments; but do not apply to retrospective staged ratings. See Reizenstein v. Shinseki, 583 F.3d 1331, 1337 (Fed. Cir. 2009) (noting that the regulations governing the reduction in a rating apply to existing rating and are intended to protect veterans who are dependent on monthly compensation from sudden and arbitrary reductions in benefits). Although Reizenstein pertained to the provisions of 38 C.F.R. § 3.343(a), which are only applicable to reductions in total ratings, the Federal Circuit applied a similar analysis with regard to the provisions of 38 C.F.R. § 3.344, applicable to reductions in ratings in general and containing additional requirements for the reduction of a rating that has been in effect for more than five years. Singleton v. Shinseki, 659 F.3d 1332, 1333-4 (Fed. Cir. 2011).

Additional safeguards apply to the reduction in a rating that has been in effect for more than five years. 38 C.F.R. § 3.344(b), (c). The RO's December 2016 decision reduced the rating for hearing loss that had been in effect for more than five years. Because the reduction in the rating for hearing loss did not reduce the combined compensation for service connected disabilities; the provisions of 38 C.F.R. § 3.105(e) pertaining to notice and hearing right in rating reductions were not applicable. 

The provisions of 38 C.F.R. § 3.344(a) provide that ratings for diseases subject to episodic or periodic improvement will not be reduced on the basis of a single examination. The regulation also requires that the rating agency consider whether the evidence makes it reasonably certain that material improvement will be maintained under the ordinary conditions of life. The December 2016 rating decision does not reflect consideration of the provisions of 38 C.F.R. § 3.344(a). The Veteran's hearing loss appears to be capable of episodic improvement. In addition there is no evidence as to whether the improvement is likely to be maintained under the ordinary conditions of life. A rating reduction that his undertaken without consideration of the applicable provisions of 38 C.F.R. § 3.344 is void ab initio. Brown v. Brown, 5 Vet. App. 413 (1993).

Because the reduction in the rating for hearing loss was undertaken without consideration of the provisions of 38 C.F.R. § 3.344, the reduction was void ab initio and the 20 percent rating is restored.

III. Service Connection-Upper Back Disability

Service connection will be granted if the evidence demonstrates that a current disability resulted from an injury or disease incurred or aggravated in active military service. 38 U.S.C.A. §§ 1110, 1131; 38 C.F.R. § 3.303(a). Service connection also may be granted for any disease diagnosed after discharge, when all of the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d).

Establishing service connection generally requires evidence of (1) a presently existing disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a nexus between the claimed in-service disease or injury and the present disability. Holton v. Shinseki, 557 F.3d 1363, 1366 (Fed. Cir. 2009) (quoting Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004)).

For certain chronic disorders, including arthritis, service connection may be granted on a presumptive basis if the disease is manifested to a compensable degree within one year following service discharge. 38 U.S.C.A. §§ 1101, 1112; 38 C.F.R. §§ 3.307(a)(3), 3.309(a). Additionally, for chronic diseases defined in 38 C.F.R. § 3.309(a) and shown in service or by a continuity of symptoms after service, the disease shall be presumed to have been incurred in service. 38 C.F.R. § 3.303(b); Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013).

In order to show a chronic disease in service, the record must reflect a combination of manifestations sufficient to identify the disease entity, and sufficient observation to establish chronicity at the time. Where a chronic disease has been incurred in service, subsequent manifestations of the same chronic disease at any later date, however remote, are service-connected unless clearly attributable to intercurrent causes. If a condition noted during service is not shown to be chronic, then generally, a showing of continuity of symptoms after service is required in order to establish entitlement to service connection.

With disability compensation claims, VA adjudicators are directed to assess both medical and lay evidence. In addressing lay evidence and determining its probative value, if any, attention is directed to both competency ("a legal concept determining whether testimony may be heard and considered") and credibility ("a factual determination going to the probative value of the evidence to be made after the evidence has been admitted"). See Layno v. Brown, 6 Vet. App. 465, 469 (1994). In terms of competency, lay evidence has been found to be competent with regard to a disease with "unique and readily identifiable features" that is "capable of lay observation." See Jandreau v. Nicholson, 492 F.3d 1372, 1376-77 (Fed. Cir. 2007). 

When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the claimant. 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102; see also Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

The Veteran contends that he injured his upper back during active service and this caused or contributed to his current upper back disability. His service treatment records (STRs) report treatment for low back problems; indeed, he is service connected for a low back disability. Throughout the appeal period, the Veteran has noted specific treatment he received in 1974 at a naval hospital for both upper and lower back conditions. Treatment records from that facility are contained in the STRs and document only treatment for lumbosacral strain. No upper back or neck complaint, injury, or treatment is noted in those records.

The first post-service evidence of treatment for an upper back/cervical spine condition is a June 1997 VA treatment note which documents magnetic resonance imaging (MRI) showing degenerative disc disease of the cervical spine. A June 1998 VA treatment record notes that the Veteran sought relief for neck pain that was worst at night. A VA physician ordered a cervical traction device for twice a day use to relieve the pain. A VA progress note from May 1999 documents the Veteran's complaints of pain on the right side and back of his neck.

In connection with his July 2009 claim for service connection for his upper back disability, the Veteran submitted a statement in which he described an incident while working on the flight deck of a ship, when a blast knocked him down the flight deck, causing him to injure his upper and lower back.

He also submitted two statements received in November 2009. One was from his sister and the other from his brother-in-law. His sister recounted the Veteran's report of an injury to the "back" on the flight deck. Both reported the Veteran's continued treatment at VA. His brother-in-law reported that the Veteran had experienced "back" pain in service and since. There were no specific references to the upper back or neck.

The Veteran testified at his October 2012 Board hearing that he injured his back when a full jet blast knocked him, and 15-20 others, down. He said he tumbled for approximately 50 feet before he could stop. He felt like something "popped" in his back.

An April 2013 Board remand directed that the Veteran be afforded a VA spine examination. In September 2013, he obtained a thoracolumbar spine examination, but the examiner did not address any upper back problems.

The RO noted in November 2013 that a cervical spine examination had not been conducted; yet a December 2013 medical addendum opinion merely repeated the findings of the September 2013 examination and did not separately examine the Veteran's upper back. Thus, the March 2016 Board remand instructed that the Veteran be afforded an examination that encompassed the cervical spine.

On VA cervical spine examination in May 2016, the examiner diagnosed cervical strain. The Veteran reported pain in his cervical spine area and flare-ups manifested by increased pain. He reported difficulty turning his neck. He told the examiner that he had not been seen or treated for a neck condition, and that he believed his neck problems developed after service.

The examiner opined that it was less likely than not that the Veteran's current cervical spine disability was related to active service. The rationale was that there were no complaints of upper back/neck pain during or one year after service. Rather, the examiner opined that such pain was most likely due to "wear and tear from years of working at a candy factory."

Analysis

While the record shows that the Veteran does have a current cervical spine disability, service treatment records do not document that such disability had its onset during active service. The Board has weighed the Veteran's statement reporting that he first experienced upper back pain following a 1974 in-service injury in which he was blown 50 feet down a flight deck against the contemporaneous service treatment records that document treatment for a low back disability, but not an upper back or neck disability; and against his seemingly contradictory statements to the VA examiner. His statements to the examiner and the contemporaneous record are more probative than his other reports of an in-service injury.

Moreover, post-service treatment records do not document the onset of arthritis of the cervical spine within one year of discharge from active service so as to warrant presumptive service connection. 38 C.F.R. §§ 3.307, 3.309.

The earliest relevant post-service treatment records documenting the Veteran's complaint of upper back pain are from June 1997, when he complained of neck pain. That seemed to resolve with the issuance of a cervical traction device, as no further treatment notes regarding upper back or neck strain were noted. At that time there was no report of an in-service injury. More recent VA treatment records document consistent complaints of low back pain, but not upper back pain.

The evidence includes one opinion as to whether the Veteran's upper back disability is related to active service. It is the responsibility of the Board to assess the credibility and weight to be given the evidence. Hayes v. Brown, 5 Vet. App. 60, 69-70 (1993) (citing Wood v. Derwinski, 1 Vet. App. 190, 192-93 (1992)). The value of a medical opinion is dependent on three factors. Nieves-Rodriguez v. Peake, 22 Vet. App. 295 (2008). First, was the medical expert fully informed of the medical history? Second, did the medical expert provide a fully articulated opinion? Id. A medical opinion that is equivocal in nature or expressed in speculative language does not provide the degree of certainty required for medical nexus evidence. See McLendon v. Nicholson, 20 Vet. App. 79 (2006). Third was the opinion supported by a reasoned analysis? The most probative value of a medical opinion comes from its reasoning. Nieves-Rodriguez, 22 Vet. App. at 304; see also Stefl v. Nicholson, 21 Vet. App. 120, 124 (2007) ("[A] medical opinion ... must support its conclusion with an analysis that the Board can consider and weigh against contrary opinions"). 

To that end, the Board finds the May 2016 VA examination report to be of significant probative value, in that it provided sound reasoning and was supported by a review of the Veteran's file and an accurate medical history, including that supplied by the Veteran, and the opinion was definitive. 

The lay evidence of record, including the Veteran's statements and the two statements from family members, are competent insofar as they report observable history and symptoms, including back pain. However, the statements from his sister and brother-in-law make no reference to the upper back or neck and as previously discussed the Veteran's reports of in-service injury and associated symptoms are of limited probative value given the contemporaneous record and his contradictory statements to the VA examiner.

Therefore, the preponderance of the evidence is against the claim of service connection for an upper back disability. As such, there is no reasonable doubt to be resolved, and the appeal is denied.


ORDER

Entitlement to an initial compensable rating for bilateral hearing loss prior to October 19, 2010 or a rating in excess of 20 percent for bilateral hearing loss for the period beginning October 19, 2010 is denied. 

Entitlement to restoration of the 20 percent rating for hearing loss, effective December 1, 2016, is granted.

Service connection for an upper back disability is denied.




____________________________________________
Mark D. Hindin
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs